UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| CHARLES IMBURGIA, | ) | CASE NO. 1:07 CV 3346 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| SALEH AWADALLAH, *et al.*, | ) | AND ORDER |
| | ) | |
| Defendants. | ) | |

On October 29, 2007, *pro se* plaintiff Charles Imburgia filed this action under 42 U.S.C. §§ 1983, 1985, and 1986, 18 U.S.C. §§ 241, 242, and 1001, and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 42 U.S.C. § 1961-68, against Assistant Cuyahoga County Prosecutor Saleh Awadallah, Cuyahoga County Prosecutor William Mason, the Cuyahoga County Prosecutor's Office, acquaintance Debbie Miller, Cleveland Police Officers John Does ##1-5, the Cleveland Police Department, Cuyahoga County Department of Children and Family Services ("DCFS") Employee Megan McLaughlin, Bridgeway Company Employee Priscilla Franklin, the Bridgeway Company, Cuyahoga County Assistant Prosecuting Attorney Barbara R. Marburger, and the DCFS. Mr. Imburgia filed an Amended Complaint on November 16, 2007 and a Second Amended Complaint on January 11, 2008, after seeking and obtaining leave of court. In the pleadings, plaintiff alleges he was unfairly convicted of three counts of rape and two counts of

unlawful sexual contact with a minor.  He seeks $ 70,000,000.00, a declaration from this court that his conviction is unlawful, injunctive relief, and the initiation of a federal criminal investigation.

**Background**

Mr. Imburgia claims that in August 2004, he was hired by Judy Miller to provide home repairs to her residence.  During the course of the employment, Judy Miller mentioned to Mr. Imburgia that her daughter, Debbie Miller, and her granddaughter, Jane Doe, were suffering from drug and alcohol problems.  Mr. Imburgia contends that he had once also had a drug problem and after his release from prison for drug related offenses, he dedicated his life to helping those with similar problems.  He alleges that at the urging of Judy Miller, he agreed to try to help Debbie.

Mr. Imburgia states that Debbie Miller was not interested in reform.  Rather, he contends that she began to misuse his offers to provide transportation and support.  He claims she would call him to provide "taxi service" and baby-sitting on demand.  He alleges that if he refused, "rude, obnoxious and threatening behavior from Defendant Miller and Jane Doe would follow" until the demand was met.  (Am. Compl. at 10.)  He contends that Ms. Miller and Jane Doe would repeatedly call him at work, on job sites, and at his home until he agreed to assist them.  He indicates that Ms. Miller would even arrive unannounced at job sites and leave Jane Doe in his care or in the care of his clients. He states that in December 2004, the situation had become too stressful and he attempted to sever all contact with Debbie Miller and Jane Doe.  Mr. Imburgia contends that he then began to receive threatening telephone calls from Ms. Miller and Jane Doe.

In January 2005, Ms. Miller allegedly met with Cleveland Police Officers  John Does #1-5 at a bar on the west side of Cleveland and accused Mr. Imburgia of sexually abusing Jane Doe.  Mr. Imburgia contends that the purpose of these meetings was to perfect "all allegations

these defendants would level against plaintiff." (Am. Compl. at 11.)  He claims several other meetings took place involving the officers, DCFS, social workers from Bridgeway Company, and Cuyahoga County Prosecutors. On February 17, 2005, Mr. Imburgia was arrested and charged with 38 counts of rape, 19 counts of gross sexual imposition, and 20 counts of sexual battery.

Mr. Imburiga initially entered a plea of not guilty to all of the charges.  He alleges that by January 2006, he was coerced into accepting a plea deal.  He indicates that due to the voluminous number of counts in the indictment, he was facing a long prison term if convicted.  He was offered a six-year sentence in exchange for his guilty plea to three counts of rape and two counts of unlawful sexual contact with a minor.  Mr. Imburgia claimed that "there existed no alternate course for the plaintiff."  (Am. Compl. at 12.)  He asserts that his guilty plea was therefore involuntary, and further contends that the state lacked jurisdiction to hold a hearing to convict him. He claims his conviction is the result of a conspiracy in violation of 42 U.S.C. § 1985, and his guilty plea was extorted from him in violation of the RICO Act.  He asserts that the defendants have violated his First, Fourth, Fifth, Sixth, Eighth, Thirteenth and Fourteenth Amendment rights in order to secure his conviction.  He seeks $70,000,000.00 in damages resulting from his conviction, as well as a declaration that his conviction violated his constitutional rights, and an order enjoining the defendants from "continuing to maintain practices and policies of violation of civil rights." (Am. Compl. at 19.)

## Analysis

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. §1915(e) if it fails to state a claim

upon which relief can be granted, or if it lacks an arguable basis in law or fact.[1] *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). For the reasons stated below, this action is dismissed pursuant to §1915(e).

A prisoner may not raise claims under 42 U.S.C. § 1983 if a judgment on the merits of those claims would affect the validity of his conviction or sentence, unless the conviction or sentence has been set aside. *See Edwards v. Balisok*, 520 U.S. 641, 646 (1997); *Heck v. Humphrey*, 512 U.S. 477, 486 (1994). The holding in *Heck* applies whether plaintiff seeks injunctive, declaratory, or monetary relief. *Wilson v. Kinkela*, No. 97-4035, 1998 WL 246401 at *1 (6th Cir. May 5, 1998). Although Mr. Imburgia claims he "is not attacking the conviction of rape," he does admit that he "is attacking the illegal and unconstitutional criminal methods and procedures used by Defendants severally and collectively that were vile and conspiratorial in nature to acquire the conviction; in violation of the laws of God, decent man [sic], the United States of America, the State of Ohio and County of Cuyahoga." (Am. Compl. at 1.) To bolster his statement, he attaches affidavits from individuals whose connection to his criminal conviction are not described, which state that Mr. Imburgia was unfairly targeted and that his conviction is without merit. Regardless of the terminology and rhetoric Mr. Imburgia chooses, the claims he has asserted clearly call into question the validity of his guilty plea and his conviction. To proceed with these claims, he must

---

[1] An *in forma pauperis* claim may be dismissed *sua sponte*, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. *McGore v. Wrigglesworth*, 114 F.3d 601, 608-09 (6th Cir. 1997); *Spruytte v. Walters*, 753 F.2d 498, 500 (6th Cir. 1985), *cert. denied*, 474 U.S. 1054 (1986); *Harris v. Johnson*, 784 F.2d 222, 224 (6th Cir. 1986); *Brooks v. Seiter*, 779 F.2d 1177, 1179 (6th Cir. 1985).

therefore allege that his conviction has been declared invalid by either an Ohio state court or a federal habeas corpus decision. There is no indication in any of his pleadings that he has been accorded this relief. His claims must therefore be dismissed.

## Conclusion

Accordingly, this action is dismissed pursuant to 28 U.S.C. §1915(e). The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[2]

IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
UNITED STATES DISTRICT JUDGE

Dated: 1/15/08

---

[2] 28 U.S.C. § 1915(a)(3) provides:

> An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith.